THE STATE v. FLAVELL AND FREDERICKS, ASSESSORS.

1. The lands and real estate of the Society for Establishing Useful Manufactures are, by virtue of the fourth section of their charter, exempt from all taxes except those raised for state purposes.   This exemption only extends to such real estate as is held by them for the purposes of their incorporation ; it includes their mills, mill lots, and water power, but does not include mountain lots, farming lands, or building lots.

2. The improvement and extension of their water power is within the scope and objects of the charter of the Society for the Establishing Useful Manufactures, and the property held by them for that purpose is entitled to the exemption from taxation provided in the charter.

3. Assessors have no right to add any amount to the sum directed to be raised for township purposes as an allowance for bad debts.

4. Under the tax laws in force in 1849, it was erroneous to assess and value as real estate property directed to be assessed as certainties,-such as mills, furnaces, &c.

5. A stockholder in an incorporated company cannot, on a *certiorari* prosecuted by him individually, have an erroneous assessment made against such corporation set aside or corrected.

6. In assessments of taxes upon lands of the Society for Establishing Useful Manufactures near their water power, and not exempt from taxation by their charter, it is correct, in estimating their value, to take into consideration the increased value of such lands by reason of their proximity to the water power, but not to add to their value any sum for the water rented and used upon such lots : this would be an indirect way of taxing the water power, which by their charter is exempt.

This was a *certiorari,* sued out in the name of the state, by the Society for Establishing Useful Manufactures, located at Paterson, to Wright Flavell and Cornelius Fredericks, as-

sessors of the township of Paterson to review the assessments for taxes made upon the property of the society in the year 1849.

The questions raised were brought before the court by the following state of the case, agreed upon by the attorneys of the respective parties.

1. That the said prosecutors were incorporated by act of the legislature of the state of New Jersey, on the 22d day of November, 1791, and that the said act of incorporation is a public act.

2. That no money was directed to be assessed, collected, or paid into the treasury of the said state for the year A. D. 1849 by act of the legislature of said state.

3. That the inhabitants of the township of Paterson, in said state, at an annual town meeting, held in April A. D. 1849, voted to raise, for the lawful purposes of said township, the sum of seven thousand dollars ($7000), and at a special town meeting, held on the 27th day of April, 1849, the said inhabitants voted to raise the further sum of $2181.82 for the like lawful purposes.

4. That the board of chosen freeholders of said county, in said year, voted and granted the sum of $5000, to be raised, &c., in said county, for the purposes of said county, and that the sum of $2600 was adjusted and ascertained by the board of assessors of the several townships of said county as the proportion of the said sum of $5000 to be levied upon the inhabitants of the said township of Paterson.

5. That Wright Flavell and Cornelius Fredericks were the assessors in said township of Paterson for the year 1849, and that they assessed and levied upon the inhabitants of said township the sum of $12,917.62.

6. That the said assessors assessed upon the said inhabitants of said township, as part of the said sum of $12,917.62, the sum of $407.68, for fees of assessors and collectors of said township in assessing and collecting the said sum of $12,917.62, and also the sum of $597.52 for anticipated bad debts.

7. That, in making the said assessment, the said assessors

State v. Flavell and Fredericks.

ascertained the amount of money to be raised from certainties as follows :

They set down as certainties—

| | | | |
|---|---|---|---|
| 2074 householders, | at | $1.35 | $2592.25 |
| 197 single men, | " | 1.50 | 295.50 |
| 131 pleasure wagons, | " | .75 | 98.25 |
| 3 coaches, | " | 2.00 | 6.00 |
| 243 horses, | " | .25 | 60.75 |
| 218 cattle, | " | .18 | 39.24 |

|  |  |
|---|---|
| Making the sum of | $2891.99 |

After deducting the said sum of $2891.99 from the whole amount to be raised, they levied the balance by a per centage upon the just and true value of the real estate in said township, and upon the just and true value of the stores, shops, cotton mills, machine shops, paper mills, and other manufacturing establishments in said township.

8. That, in assessing the property of the prosecutors, the said assessors valued and estimated the mountain lands and other lands of the said prosecutors, fixing the number of acres at 120, and the value at $200,000, upon which sum they levied 37 cents per $100.

9. That the water power of the prosecutors is used, in the various manufacturing establishments of the said town, on land belonging to the prosecutors by their lessees; that the said lessees are bound by their respective leases to pay all taxes and assessments laid or levied upon the premises by them held respectively.

10. That the said assessors valued and estimated, and assessed to the said lessees, respectively, the buildings by them used for manufacturing purposes, the lots of land upon which said buildings are erected, and the machinery used by them in said buildings for manufacturing purposes.

11. That the said lessees have paid to the collectors of said township-all assessments made upon them by the said assessors for the said year 1849.

12. That the said moneys, so as aforesaid voted and granted, were laid by way of assessment, and that the rate per centum

by which said moneys were to be levied was fixed by the said assessors, and not by any law of said state.

13. That, in fixing the value of the land of the prosecutors, the said assessors considered the water power owned by the prosecutors as one of the elements of value; that is to say, that they considered the land of the prosecutors much enhanced in value by its location in the vicinity of an extensive water power, much of it being adapted for building lots, and valued accordingly; that they ascertained, from the different lessees of the prosecutors, the number of feet of water owned by the prosecutors; that they made a calculation of the rents arising from such sale, and estimated the rent per foot of such water as equal to one-tenth of its actual value; that they did not assess for the whole amount thus arrived at, as they found the sum was very large, and made some deduction from it.

14. That all the water power owned by the prosecutors (being about —— feet) is let upon leases renewable for ever, and that the prosecutors are not now engaged in any kind of manufacturing, except as stockholders of the Paterson Manufacturing Company (who manufacture sail duck; and that they hold $26,500 out of a paid capital of $125,000 of said company).

15. That this *certiorari* is prosecuted to set aside the assessment against the prosecutors only, and that the charter of the prosecutors and the duplicate of the township of Paterson for the year 1849 be taken and considered as part of this case.

The fourth section of the society's charter (*Rev. Stat.* 108) is as follows:

4. "*And,* the more effectually to encourage so useful and beneficial an establishment, *be it further enacted by the authority aforesaid,* That all the lands, tenements, hereditaments, goods, and chattels, to the said society belonging, shall be and they are hereby declared to be free and exempt from all taxes, charges, and impositions whatsoever under the authority of this state, whether for state or county uses, or for any other use whatsoever; *provided always,* that the said exemption shall not be construed to extend to the private or separate property of any member of the said corporation, in

his or her individual capacity; and, as touching the lands, tenements, and hereditaments of the said society, shall continue in force for the term of ten years only, after which term it shall be lawful to lay such taxes, for the use of the state, upon the said lands, tenements, and hereditaments as shall be laid upon other lands, tenements, and hereditaments of like value, nature, or description; *provided nevertheless*, that in case the said taxes shall be laid by way of assessment, it shall be according to a certain rate per centum, to be prescribed in the law laying such taxes, of the true and absolute value of the lands, tenements, or hereditaments whereupon the same shall be laid or assessed, and shall not extend, directly or indirectly, to the moneys, goods, or chattels, whether in possession or action, or to the profits, real or supposed, of the said society."

The cause was argued * before the CHIEF JUSTICE and Justices OGDEN and HAINES, by Mr. *Gledhill* and Mr. *W. Pennington*, for the plaintiff in *certiorari*, and by Mr. *Zabriskie* and Mr. *Vroom*, for defendants.

Mr. *Gledhill* and Mr. *Pennington*, for plaintiff.

This assessment must be set aside for several reasons.

1. Because the whole assessment is made in violation of law. It is required to be made according to the provisions of the act of 1847. *Pam.* 177. That act requires the tax to be assessed first on certain articles designated as certainties, among which are mills, furnaces, storekeepers, &c., only the *balance* is to be raised by an assessment upon the real estate. In this assessment, these certainties are not *first* rated, but are *valued* as real estate, and the tax assessed upon them, together with the real estate, at a per cent. upon their valuation, for example, there are on the duplicate 118 stores, valued at $110,200, which are assessed for $407. The assessment upon them according to law, at ten dollars each, would have been

* This cause was argued at June term, 1853, but the case was held under advisement until the present term, because several of the questions were involved in the next three causes argued at November term last.

$1180, which, if thus assessed, would have lessened the tax upon real estate.

2. Because the Paterson Manufacturing Company, in which the prosecutors are stockholders to the amount of $26,500, are taxed $277 at the per centage on the valuation of their duck mill, when, according to law, they would only have been taxed a sum not exceeding ten dollars.

3. Because the lands of the prosecutors have been taxed twice; the water power let to each lessee has been taxed in the hands of the tenant, by adding its value to the valuation of his lot, and it is again taxed in the hands of the prosecutors, by adding its value in the valuation of their mountain lands, as appears by state of case, § 13.

4. Because the prosecutors are by their charter exempted from all taxes upon their real estate, except for *the use of the state*, so that no township or county taxes may be assessed upon their lands.

The fourth section, after exempting their property from taxation, provides that for their lands this shall continue for only ten years, after which it shall be lawful to tax their lands for the use of the state.

This, by plain implication, limits the termination of the exemption to state taxes only.

It is an established rule of construction that *expressio unius est exclusio alterius*. *Broom's Legal Maxims*. See *Law Lib.* 298; *Dwarris on Stat.* 707.

The construction of the words of a statute must be reasonable and according to the general intent of the legislature on the subject. 22 *Pick.* 571. Here the object of the legislature was to encourage the establishment of manufactures by a relief from taxes. A relief for ten years only would have been a paltry boon.

Again, a statute must be so construed that no clause or word is without effect. *Dwarris on Stat.* 706; 1 *Harr.* 285. And here, if the effect contended for is to be given to the first clause of the proviso, then the second clause is useless and unmeaning —there was no occasion to enact that "after that it shall be lawful to lay taxes for the use of the state."

This interpretation is also supported by the provisions of the 37th section of the charter (*Rev. Laws* 124), which provides that the act shall be construed most beneficially for the company.

Mr. *Zabriskie* and Mr. *Vroom*, for defendants.

This case depends upon the construction of the fourth section of act incorporating prosecutors, passed November 22, 1791. *Rev. Laws* 108.

If by that section the lands of the prosecutors are liable to county and township taxes, then this assessment cannot be set aside. It may be corrected.

The lands and real estate of the prosecutors were exempted from all taxes for ten years, or until November 22, 1801, since which they were liable to tax.

The defendants contend that the true construction of the proviso to this section is, that after ten years, all exemption was at an end, but that after that, taxes *for the use of state* should only be levied in the manner therein prescribed; but that other taxes, for county, township, or city, could be levied in any lawful way.

The purview or enacting part of the section ordains that the lands and goods of the society should be free from all taxes by the state for state, county, or other uses. This is the exemption plainly defined.

The proviso then says that, as touching lands of society, *said* exemption (*i. e.* from state, township, and county taxes,) shall continue in force for ten years only.

Now nothing can be clearer, more definite, and certain than this. The exemption first defined, and then *said* exemption shall cease; just as broad as grant.

If the proviso ended here, no one would doubt but that all exemption ended in 1801.

But the section (not proviso or limitation, for that ends with "ten years only,") goes on to say, that after that it shall be lawful to lay for use of state on said lands *such* taxes as shall be laid on other lands, &c.; *provided always*, if by *assessment* upon the *true value*, according to a certain rate *per*

*centum*, to be prescribed by law, and not upon chattels and profits.

This whole clause is providing for a state tax, from which *they had been* exempted, *enacting* that it shall be equal and requiring that it shall be by a *per cent.* on true value of lands, and not on chattels or profits.

The only way in which these words can limit the absolute proviso for ending the exemption in ten years is by implication. But implication cannot affect plain words, if subsequent words, from which implication is derived can have force without it.

Now these words are evidently intended to affect *state taxes* only, and the enacting part, that it shall *be lawful to lay taxes* for the use of the state, is necessary to give effect to the proviso. The words, *for the use of the state*, are not necessary to give effect to the proviso, but *to limit* the force of it to taxes for the use of the state, to which, only, it is intended that the proviso and restriction shall apply.

And the intention to apply *these restrictions* to state taxes only can never by implication extend to exclude all others from the limitation of the exemption so plainly stated. 2 *Gill* 355, *Philadelphia Railroad Co.* v. *Bayless.*

If this should seem doubtful, there is a well established rule of construction that should settle it.

This is a grant of a privilege to a corporation—a great privilege—and against *common right*, and such grants must be construed most favorably for the people, and most strongly against the grantee.

This is laid down in the writs of error, in *Camden and Amboy Railroad Co.* v. *Briggs*, 2 *Zab.* 644; 2 *Harr.* 80, *State* v. *Berry*; 4 *Peters* 155, *Beatty* v. *Knowles*; 3 *Zab.* 513, *State* v. *Mansfield.*

This construction would put a large part of the real property in Paterson beyond county and township taxes, and compel *all others* to pay the taxes of the exempt property, these taxes being the expenses of the protection of that property.

No *state taxes* are included in this assessment.

But it is contended, that if these lands are *not exempt* from county and township taxes, they are *to be levied* as in last proviso named, and that they are not so levied.

1. They are not within proviso. Its words are, that in case *said* taxes are levied by way of assessment, it shall be, &c., where the words *said* taxes, by the plainest rule of construction and common sense, apply to the last mentioned taxes *next before it.* Every one, in reading, feels this to be the sense; the last words are, " taxes for the use of state."

Besides, the exemption is from *taxes, charges, and impositions.* This speaks of taxes only, and therefore only refers to last clause, where taxes are mentioned alone.

2. They are in fact assessed according to the provisions of the section. They are—1. Such as are laid upon the lands of like value or description. 2. They are levied upon the true value of such lands. 3. At a *certain* rate *per centum prescribed* in the law. It was certain, *ascertainable. Id certum est quod certum reddi potest.* And—

4. To be prescribed by the law laying such tax.

The law of March 4, 1847, (*Pam.* 177) is made by the act of March 9, 1848, (*Pam.* 227) the law for laying this tax. It says (§ 5), " That the amount above what is raised by certainties shall be by a certain *per centum* upon such valuation." This law prescribes the *per centage.* The assessors *fix* it.

These taxes are levied upon property not held for manufacturing purposes—on farms and house lots.

The exemption can only affect such property as they can hold by their charter. 3 *Zab.* 510, *State* v. *Mansfield.*

As to what property they may hold by their charter, see § 2 *R. L.* 409.

The CHIEF JUSTICE. The prosecutors complain of the illegality of an assessment of taxes, made upon their property by the assessors of the township of Paterson, in the year 1849.

1. The first ground of complaint is, that the real estate of the prosecutors was illegally assessed. It is claimed that, by the fourth section of their act of incorporation, the lands of

the society are exempt from taxation for all purposes whatever, except for the use of the state. By that section it is enacted "that all the lands, tenements, hereditaments, goods, and chattels, to the said society belonging, shall be, and they are hereby declared to be, free and exempt from all taxes, charges, and impositions whatsoever under the authority of this state, whether for state or for county uses, or for any other use whatsoever; *provided always*, that the said exemption shall not be construed to extend to the private or separate property of any member of the said corporation, in his or her individual capacity; and, as touching the lands, tenements, and hereditaments of the said society, shall continue in .force for the term of ten years only, after which term it shall be lawful to lay such taxes for the use of the state upon the said lands, tenements, and hereditaments as shall be laid upon other lands, tenements, and hereditaments of like value, nature, or description."

The language of the enactment leaves no room for the application of the principle adopted in the case of *The Railroad Co.* v. *Hillegas* (3 *Harr.* 11, 71,) that all taxes are state taxes, because they are imposed by the authority of the state. This section, in the most explicit terms, distinguished between the authority by which the taxes are assessed and the uses to which they are to be applied. The exemption is "from all taxes, charges, and impositions whatsoever under the authority of this state, whether for *state* or for *county* uses, or for any other use whatsoever." The proviso is, that, as to the lands, the exemption "shall continue in force for the term of ten years only, after which it shall .be lawful to lay such taxes for the *use of the state* upon .the said lands, &c., as shall be laid upon other lands, &c., of like value, nature, or description." The first clause of the proviso, standing alone, would limit the operation of the exemption clause, so far as regards the real estate, to the term of ten years. The second clause of the proviso qualifies the limitation, by confining it to a particular class of taxes. The effect of the whole proviso, taken together, is not to determine the entire operation of the exemption clause at the end of ten years, but to narrow its ope-

ration at that time to a part of the subject matter to which it originally applied.

It was argued with much ingenuity that, by the proviso, the exemption of the real estate from taxation totally ceases at the expiration of ten years; that the last clause of the proviso was designed merely to provide for the mode in which the state taxes should be assessed, and cannot by mere implication revive the exemption from township and county taxes. However plausible the suggestion may be, it is obvious that it is not the natural and plain meaning of the section. That construction can only be reached by detaching the various members of the sentence from the relation in which they stand to each other. The proviso, as it stands in relation to the exemption clause, declares that the exemption of the lands of the society from all taxes, for state, county, or other uses, shall continue in force for the term of ten years only, after which the exemption shall not include taxes for state uses.

By the terms of the charter, the lands of the society were exempted from all taxes whatever under the authority of this state for the term of ten years. From the expiration of that term the lands are exempt from all taxes for county, township, or city purposes. They are liable to taxes under the authority of this state for *the use of the state* only. It is conceded that the entire assessment sought to be relieved against in this cause was made for township and county uses.

It was decided by this court, in the case of *The State* v. *Mansfield* (3 *Zab.* 510), that where the property of an incorporated company is by their charter exempted from taxation, the exemption extends only to such property held by the company as is necessary to effect the purposes of their incorporation. It is objected, in this case, that none of the real estate of the prosecutors is held by them for uses incident to the object of the incorporation; that the society was originally incorporated for carrying on the business of manufactures in this state; that they have long since ceased to carry on the business of manufactures, and have abandoned all intention of returning it; and that they have perverted the institution from its original design, by confining their operations to cre-

ating water power, and leasing out sites and water privileges for manufacturing establishments; and hence it is insisted, upon the authority of the case just cited, that the society cannot claim the benefit of the exemption from taxation granted in their charter.

This very objection was urged against the society, as a ground of forfeiture of charter, on an application by them for an injunction against the Morris Canal Company, before Chancellor Williamson, at January term, 1829. The objection, as it is now presented, cannot be more appropriately answered than in the language of the learned and sagacious chancellor on that occasion.

"Nor has the society, in my opinion, by employing their funds in improving the natural advantages of the district, by increasing their water power and multiplying seats for manufacturing establishments, and granting leases for manufacturing purposes to individuals and private companies, either abused their corporate powers or perverted the institution from its original design. A right to improve their estate, and to sell, lease, or otherwise dispose of its property, is incident to all corporations, unless restrained by the provisions of their charter; and the society, as the proprietors of the lands, had the clear right, without the grant of an express power for the purpose, to have done all those things. But the legislature has expressly granted to the society, not only a capacity to *acquire and hold* lands, but to sell, grant, demise, alien, and dispose of them. And without a power to improve and sell or lease, I would ask, what would have been the condition of the town of Paterson in comparison with its present condition? where its 8000 souls, its cotton and iron business, and its various other branches of manufactures, now successfully carried on there? Without those rights and powers, all the natural advantages of the place, this important stream of water, capable of supplying numerous manufactories, and thereby furnishing employment for many thousands of men, women, and children, must have been held by the society a monopoly of privileges and advantages, without a capacity to use them, or power to permit others to do it. The society has, by the exercise of this

power and the judicious management of its funds, actually introduced and established manufactures, excited numerous individuals to enterprise and industry, drawn into the district capital and manufacturers, and built up a large flourishing town, and thereby greatly added to the wealth and population of New Jersey, and elevated her character in the Union as a manufacturing state; and I have not any doubt that the population, active industry, and wealth of the district have been much better promoted, and the interest of the state infinitely more advanced, by the employment of the funds of the society in increasing their water power, creating advantageous sites for factories, and otherwise improving the great natural advantages of the place, than if the society had employed its capital in erecting buildings, digging and establishing navigable canals, and carrying on themselves the business of manufactures. And I cannot consider the employment of their capital, in the way in which it is employed, either an abuse of power or a perversion of the end of the institution."

We concur fully in the views, and adopt the conclusion of the chancellor. The society have not perverted the end of their institution, or, by the creation and lease or sale of water privileges, applied their property to uses alien to the object of their incorporation, and thereby forfeited the right of exemption from taxation granted by their charter.

But it appears, by the case, that the prosecutors were assessed with 120 acres of land. A part of it was mountain land, a part of it is described as suitable for town lots, and portions of it appear to have been used as ordinary farm land. The water power itself not only, but the banks, dams, canals, and all lands appropriate for mill sites, or necessary for the maintenance and extension of the raceways and other works of the company, are incident to the purposes of their incorporation, and are, by the charter, exempt from taxation. But mountain lands, farm lands, town lots or dwellings, can have no necessary connection with the water power or privileges; they are not necessarily incident to the purposes of the corporation, and are not exempt from taxation under the provisions of the society's charter.

A part of the property of the prosecutors being liable to taxation, it remains to inquire whether the assessment was legally made.

The first ground of complaint is, that the sum of $597.52, for anticipated bad debts, was added to the amount ordered to be raised, and was included in the assessment. This was clearly illegal, and to that extent the assessment should be corrected. *The State* v. *Bentley*, 3 *Zab.* 532.

It is further objected, that certain stores, mills, and manufactories, which by law were required to be rated as certainties, and the amount thus assessed to be deducted from the total taxation before the assessment upon the real estate is made, were not so rated, but were assessed in common with other real estate. The act of 1847, (*Pamph. Laws* 177) under which the assessment was made, requires that certain "articles, persons, and things," in the act specifically enumerated, shall be valued and rated at the discretion of the assessor. It further provides that no property, by the act specifically mentioned as taxable, shall be subject to a tax as real estate. The property thus specifically enumerated in the act as taxable, includes several kinds of mills and manufactories, which the assessor, in making the present assessment, has valued as real estate. The assessment in this respect is erroneous. The error might have afforded just ground of complaint to any person whose property was thereby assessed beyond its legal proportion. But it does not appear that any prejudice whatever, by the erroneous mode of taxing these manufactories, was occasioned to the owners of other real estate, or that the amount of taxes assessed upon other lands was thereby in any wise increased; on the contrary, as the articles thus specifically enumerated in the act were to be valued or rated entirely at the discretion of the assessor, it seems clear that the error in the mode of making the assessment could not have operated to the prejudice of the owners of other real estate so as to afford a legal ground of complaint.

It is further objected, that a sail duck manufactory, in which the prosecutors were interested as part owners, was taxed, as real estate, for an amount much larger than could have been

rated if taxed specifically, as directed by the statute. This error appears, by the case, to have been committed, and as the assessment upon the manufactory is higher than it could have been if taxed in pursuance of the statute, it operated injuriously to the owners, and affords a legitimate ground of complaint. It appears, however, that the manufactory thus illegally assessed was not owned by nor assessed to the prosecutors in their own name. The assessment was against the Paterson Manufacturing Company, to whom the factory belonged, in which company the prosecutors were stockholders. The Paterson Manufacturing Company, against whom the assessment was made, and who are the party aggrieved, are not here complaining of its illegality. It is objected, and rightfully, on the part of the defendants, that it does not lie in the mouth of every individual stockholder, whether his interest be small or great in a corporation aggregate, to complain of an illegal assessment against the body corporate. The exception should be made by the corporation itself which is wrongfully assessed, and not by the individual stockholders. The *certiorari* would never have been allowed to the prosecutors upon this ground, nor can they now avail themselves of the exception.

The last ground of complaint is, that in making the assessment upon the real estate of the prosecutors, the assessors included the rent derived from the water power as one of the elements of value. The mode of making the valuation is thus stated in the case agreed upon: " In fixing the value of the lands of the prosecutors, the assessors considered the water power owned by the prosecutors as one of the elements of value; that is to say, they considered the land of the prosecutors much enhanced in value by its location in the vicinity of an extensive water power, much of the land being adapted for building lots, and valued it accordingly. They also ascertained, from the different lessees of the prosecutors, the number of feet of water owned by the prosecutors; they made a calculation of the rents arising from such water, and estimated the rent per foot of such water as equal to one-tenth of its real value. They did not assess for the whole amount thus arrived at, as they found the sum very large, but made some deduction from it.

City of Paterson v. The Society for Establishing Useful Manufactures.

The first element of value adopted by the assessors, *viz.* the location of the lands in the vicinity of an extensive water power, was an advantage possessed by the lands of the prosecutors in common with other lands similarly situated, and is clearly a legitimate ground of valuation. But the enhanced value placed upon the land of the prosecutors, by reason of the value of their water power, and of the rents derived from it, is obviously but an indirect mode of taxing property of the company, which is exempted from taxation by their charter. In this respect, also, the assessment is erroneous. The objection is not merely that the assessment is higher than it should have been, but that it is made upon erroneous principles. It is, therefore, properly the subject of relief in this court.

The assessment must, if practicable, be corrected in the various particulars in which it is erroneous. If there are no means by which the errors may be corrected, and the assessment conformed to the rights of the prosecutors and the rules of law, the assessment must be set aside.

Justices OGDEN and HAINES concurred.